## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## MANHATTAN COURTHOUSE

| | |
|---|---|
| Antonio Lewis, individually and on behalf of all others similarly situated, | 1:22-cv-10882 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Samsung Electronics America, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Samsung Electronics America, Inc. ("Defendant") manufactures, markets, and sells the Z Fold 3 smartphone, which provides a significantly larger screen relative to other smartphones through a hinge in the center allowing it to "fold" into the size of a regular phone ("Product").




**I.    REPRESENTED AS DURABLE**

2.   Defendant advertises the Product as meeting stringent durability standards, based on rigorous tests, such that its screen can be folded and unfolded at least 200,000 times, which it claims is the number of folds a user would have in five years.

3.   However, the testing methodology, endorsed by Bureau Veritas, is flawed and not representative of real-world usage.

4.   This is because the goal of the testing was to determine the maximum number of folds before functionality was reduced without regard to real world conditions.

5.   Videos show a pause between each fold and unfold sequence, which means no external strain, pressure or heat-generated friction is involved.

6.   In normal use, the Product is exposed to dust, debris, sweat, handling, heat, cold and water, which can and often does penetrate the screen protector at the hinge, interfering with the folding mechanism.

7.   Even when other entities applied fold tests similar to Defendant's, the Product only sustained 120,000 folds, with significant screen and pixel damage before 20,000 folds.

**II.   SCREEN DEFECTS**

8.   The most important part of the Product is the hinge, which unites its two halves.

9.   In a high percentage of screen failures, users will first notice a minor crack (left), though a majority of devices will immediately suffer a crack running the length of the fold.




10. After the initial crack, a black unresponsive zone will form, sometimes accompanied by a green or white line spanning the length of the screen.



11. The Product is highly susceptible to screen damage including corrupted pixels, through microscopic particles getting under the protective film at the hinge, creating air pockets.



12. Even cold temperatures are capable of causing the screen protector to snap instead of bend, rendering the screen non-functional when the phone is unfolded.

### III. FAILURE TO HONOR WARRANTY

13. Despite Defendant's awareness of the Product's durability issues, it consistently shifts blame to user error or misuse, such as improper handling of the screen protector, dropping the device, applying pressure to the screen, exposing it to water or other causes.

14. Defendant consistently fails to honor the one year warranty when a user reports screen damage, requiring them to pay upwards of five hundred dollars.

15. After a user sends in their device for repair, they can be without their phone for over a month, without any "loaner" phone, which they are forced to buy on their own.

16. This process takes so long because the extent of the damaged screens was greater than Defendant expected, such that there is a shortage of replacement parts.

17. Even third-party repair shops Defendant has contracted with are not trained or

equipped to adequately repair the damaged screens, often due to Defendant's failure to supply them necessary parts and instructions.

18. As a result of the false and misleading representations, the Product is sold at a premium price, starting at $1,799 when first released in late 2021, which has declined slightly with release of newer models, excluding tax and sales.

## Jurisdiction and Venue

19. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

20. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

21. Plaintiff is a citizen of Virginia.

22. Defendant is a New York corporation with its principal place of business in New Jersey.

23. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

24. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores and over the internet, in the States Plaintiff seeks to represent.

25. Venue is in this District with assignment to the Manhattan Courthouse because Defendant (1) is a citizen of New York because it is organized under the laws of New York, (2) is subject to personal jurisdiction in any district within this State, and (3) has its most significant contacts within this District in this State, based on its commercial operations and sales compared to other districts.

Parties

26. Plaintiff Antonio Lewis is a citizen of Charlottesville, Albemarle County, Virginia.

27. Defendant Samsung Electronics America, Inc. is a New York corporation with a principal place of business in Ridgefield Park, Bergen County, New Jersey.

28. Defendant is the global leader in the development of foldable phones, which allow significantly larger screens because they can be folded to a regular size phone.

29. Plaintiff purchased the Product between late 2021 and the middle of 2022, at the Xfinity Store by Comcast, 3912 Lenox Avenue, Charlottesville, Virginia 22901, at or around the above-referenced price.

30. Through no fault of his own, and despite keeping the Product protected from drops, the elements, water, and not mistreating the screen protector, the hinge cracked, causing the screen to become non-responsive and deteriorate in use.

31. Plaintiff attempted to get coverage from Defendant including pursuant to its warranty, but was told screen repair was not included.

32. Defendant informed Plaintiff that the damage caused to his device was due to his misuse, without any supporting evidence.

33. Defendant told Plaintiff that it would cost him over $500 for the repair he needed, even though he paid close to $1,800 for the Product and did not have it for over one year.

34. Plaintiff expected the Product would be durable as described by Defendant with respect to the number of folds, and that it would function adequately for a reasonable period of time without requiring repair or servicing, and its screen would not break.

35. Plaintiff paid more for the Product than he would have had he known the representations and omissions were false and misleading, or would not have purchased it.

36. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

## Class Allegations

37. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Virginia and New York Class:** All persons in the State of Virginia and New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, Arkansas, North Carolina and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

38. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

39. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

40. Plaintiff is an adequate representative because his interests do not conflict with other members.

41. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

42. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

43. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

### New York General Business Law ("GBL") §§ 349 and 350 and/or Virginia Consumer Protection Act ("VCPA"), Virginia Code §§ 59.1-196 *et seq.*

44. Plaintiff incorporates by reference all preceding paragraphs.

45. Plaintiff expected the Product would be durable under normal and expected use and would not break or deteriorate within a year of his purchase, and that it was tested to be durable for 200,000 folds, the equivalent of five years.

46. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Violation of State Consumer Fraud Acts (Consumer Fraud Multi-State Class)

47. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

48. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

49. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

### Breach of Contract

50. Plaintiff and Defendant entered into a contract for the sale of the Product.

51. The terms included the Product would be durable and not break or become diminished in use through normal usage and that this would last for 200,000 folds.

52. Plaintiff paid money for the Product, which Defendant received.

8

53. Defendant breached the contract because the Product was not durable and did break and become diminished in use in the course of normal usage, and did not last for 200,00 folds.

54. Plaintiff was injured when Defendant refused to repair and/or replace the Product unless he paid at least another five hundred dollars.

55. Plaintiff had no choice but to pay this amount or be left with a phone that was non-functional or significantly reduced in functionality and use-value.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

56. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would be durable under normal and expected use and would not break or deteriorate within a year of his purchase, and that it was tested to be durable for 200,000 folds, the equivalent of five years.

57. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

58. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was a device with a significantly larger screen, yet was as durable as a traditional "candy bar" glass slab-type phone.

59. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would be durable under normal and expected use and would not break or deteriorate within a year of his purchase, and that it was tested to be durable for 200,000 folds, the equivalent of five years.

60. Defendant's representations affirmed and promised that the Product would be durable under normal and expected use and would not break or deteriorate within a year of his purchase, and that it was tested to be durable for 200,000 folds, the equivalent of five years.

61. Defendant described the Product so Plaintiff believed it would be durable under normal and expected use and would not break or deteriorate within a year of his purchase, and that it was tested to be durable for 200,000 folds, the equivalent of five years, which became part of the basis of the bargain that it would conform to its affirmations and promises.

62. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

63. This duty is based on Defendant's outsized role in the market for this type of product, the industry leader in foldable consumer electronics.

64. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

65. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

66. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

67. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

68. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would be durable under normal and expected use and would not break or

deteriorate within a year of his purchase, and that it was tested to be durable for 200,000 folds, the equivalent of five years.

69.  The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected that it would be durable under normal and expected use and would not break or deteriorate within a year of his purchase, and that it was tested to be durable for 200,000 folds, the equivalent of five years, and he relied on its skill and judgment to select or furnish such a suitable product.

### Fraud

70.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would be durable under normal and expected use and would not break or deteriorate within a year of his purchase, and that it was tested to be durable for 200,000 folds, the equivalent of five years.

71.  Defendant's third-party testing did not incorporate or account for normal use conditions to reach the 200,000 folds it claimed could be achieved before the Product became reduced in functionality.

### Unjust Enrichment

72.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;
2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated:   December 26, 2022

                                              Respectfully submitted,

                                              /s/ Spencer Sheehan
                                              Sheehan & Associates, P.C.
                                              60 Cuttermill Rd Ste 412
                                              Great Neck NY 11021
                                              (516) 268-7080
                                              spencer@spencersheehan.com