UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTONIO LEWIS, individually and on
behalf of all others similarly situated,

Plaintiff,

-against-

SAMSUNG ELECTRONICS AMERICA,
INC.,

Defendant.

Case No. 1:22-cv-10882 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Antonio Lewis ("Plaintiff") brings this putative class action against

Defendant Samsung Electronics America, Inc. ("Defendant" or "Samsung") based on

purported defects with the Samsung Galaxy Z Fold3 smartphone (the "Z Fold3").  He alleges:

(1) a violation of the New York General Business Law §§ 349 and 350; (2) a violation of the

Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 *et seq.*; (3) breach of contract;

(4) breach of express warranty; (5) breach of the implied warranty of merchantability/fitness

for a particular purpose; (6) a violation of the Magnuson-Moss Warranty Act, 15 U.S.C.

§ 2301 *et seq.*; (7) fraud; and (8) unjust enrichment.  *See* ECF No. 1 ("Compl.") ¶¶ 44-72.

Defendant has moved to compel arbitration with Plaintiff and to dismiss this case.  ECF Nos.

11 ("Br."), 15 ("Reply").  Plaintiff opposes.  ECF No. 14 ("Opp.").  For the reasons stated

below, Defendant's motion to compel is GRANTED, but its request for dismissal is DENIED.

Instead, the case is stayed pending the conclusion of proceedings before the arbitrator.

BACKGROUND

Defendant "manufactures, markets, and sells" the Z Fold3, "which provides a

significantly larger screen relative to other smartphones through a hinge in the center allowing

it to 'fold' into the size of a regular phone."  Compl. ¶ 1.  According to Plaintiff, "Defendant advertises the [Z Fold3] as meeting stringent durability standards, based on rigorous tests, such that its screen can be folded and unfolded at least 200,000 times, which it claims is the number of folds a user would have in five years."  *Id.* ¶ 2.  Plaintiff alleges, however, that Defendant's testing methodology is "flawed and not representative of real-world usage," *id.* ¶ 3, and that the actual number of times that a Z Fold3 can be folded is significantly lower than 200,000, *see id.* ¶ 7.

Plaintiff purchased the Z Fold3 at a store in Charlottesville, Virginia on August 15, 2022.  *See id.* ¶ 29; ECF No. 12 ("Cantwell Decl.") ¶ 3.  The box for the Z Fold3 states (in bold, medium-gray lettering against a black background) that it "[c]ontains . . . Terms and Conditions."  Cantwell Decl., Ex. A (the "External Label") at 1.  It also says:

> IMPORTANT INFORMATION
> If you use or retain the device, you accept Samsung's Terms and Conditions, *including an Arbitration Agreement*.  Full terms, warranty and opt-out information are at www.samsung.com/us/Legal/Phone-HSGuide/, the enclosed materials & device settings.

*Id.* (emphasis added).

The URL[1] listed on the External Label links to a page on Defendant's website with the heading "Terms and Conditions."  *See* Cantwell Decl. ¶¶ 8, 19-20; *id.*, Ex. E (the "Web Page") at 1.  The first paragraph on the Web Page states (in the version that appeared on Defendant's website in August 2022, *see* Cantwell Decl. ¶ 20) in bold black lettering against a light gray background:

---

[1] A URL (short for "uniform resource locator") is also known as a "web address."  *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 830 (2d Cir. 2021).  It is "used by a browser in locating the relevant [internet] document."  *URL*, Oxford English Dictionary, https://doi.org/10.1093/OED/4112925987 (last visited Oct. 23, 2023).

> This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung").  You can opt out of the agreement within 30 calendar days of the first consumer purchase (or use of application) by emailing optout@sea.samsung.com or calling 1-800-SAMSUNG (726-7864) and providing the applicable information.  For complete terms and conditions that bind you and Samsung, refer to the "Arbitration Agreement" section of this document.

Web Page at 1.  Below that is a dropdown menu with five items; the first item is "Arbitration Agreement."  *Id.* at 2; *see* Cantwell Decl. ¶ 19.  Clicking the bubble next to the first item takes the user directly to the agreement (the "Arbitration Agreement").  *See* Cantwell Decl. ¶ 19.

The first two paragraphs of the Arbitration Agreement state in bold black lettering against a white background:

> This is a binding legal agreement ("Agreement") between you (either an individual or entity) and Samsung Electronics America, Inc. ("Samsung").  Electronic acceptance of the agreement, opening the product packaging, use of the product, or continued possession of the product, constitutes acceptance of this agreement, regardless of whether you are the original purchaser, user, or other recipient of the product.

> You and Samsung each agree that all disputes between you and Samsung that in any way relate to, or arise from, the standard limited warranty; or the sale, condition, or performance of the product, shall be resolved exclusively through final and binding arbitration, and not by a court or jury.  Any such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim.  Specifically, without limitation of the foregoing, you shall not under any circumstances proceed as part of a class action.  The arbitration shall be conducted before a single arbitrator, whose award may not exceed, in form or amount, the relief allowed by the applicable law.

Web Page at 2.  The next paragraph is not in bold (except for the URL).  It says:

> The arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes.  The AAA Rules are available online at www.adr.org or by calling the AAA at 1-800-778-7879.  This Agreement is entered into pursuant to the Federal

Arbitration Act.  The laws of the State of New York, without reference to its choice of law principles, shall govern the interpretation of the Agreement and all disputes that are subject to this Agreement.  The arbitrator shall decide all issues of interpretation and application of this Agreement.

*Id.*  Later, the Arbitration Agreement says:

You may opt out of this Agreement by providing notice to Samsung no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product, or use of the application or software.  To opt out, you must send notice by e-mail to optout@sea.samsung.com, with the subject line: "Arbitration Opt Out."  You must include in the opt-out email

- (a) your name and address;

- (b) the date on which the Product was purchased or first use of the application or software;

- (c) the Product model name or model number; and

- (d) the IMEI or MEID or Serial Number, as applicable, if you have it (the IMEI or MEID or Serial Number can be found (i) on the Product box; (ii) on the Product information screen which can be found under "Settings;" (iii) on a label on the back of the Product beneath the battery, if the battery is removable; and (iv) on the outside of the Product if the battery is not removable).

Alternatively, you may opt out by calling 1-800-SAMSUNG (726-7864) no later than 30 calendar days from the date of the first consumer purchase of the Product and providing the same information.  These are the only two forms of notice that will be effective to opt out of this Agreement.  Opting out of this Agreement will not affect in any way the benefits to which you would otherwise be entitled, including the benefits of the Standard Limited Warranty.

*Id.* at 3.

Inside the Z Fold3's box is a pamphlet titled "Quick Start Guide & Terms and Conditions."  Cantwell Decl. ¶ 9.  A section labeled "Terms and Conditions" states (with the first two paragraphs and the URLs in bold, and all in black typeface against a white background):

> Read this document before operating the mobile device, accessories, or software (defined collectively and individually as the "Product") and keep it for future reference.  This document contains important Terms and Conditions.  Electronic acceptance, opening the packaging, use, or retention of the Product constitutes acceptance of these Terms and Conditions.
>
> Arbitration Agreement - This Product is subject to a binding Arbitration Agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung").  You can opt out within 30 calendar days of purchase: email optout@sea.samsung.com or calling 1-800-SAMSUNG (726-7864) and providing the applicable information.
>
> The Arbitration Agreement, Standard One-year Limited Warranty, End User License Agreement (EULA), and Health & Safety Information for your device are available at:
>
> English: www.samsung.com/us/support/legal/mobile
>
> Spanish: www.samsung.com/us/support/legal/mobile-SP

*Id.*, Ex. B (the "Pamphlet") at 2.

The Z Fold3 requires users to go through a "set-up process" that is "presented to users through a series of interactive screens on the device."  Cantwell Decl. ¶ 13.  The second screen in this process – and the first screen after a welcome screen – is titled "For your review" in large lettering.  *Id.* ¶ 15; *see id.*, Ex. C (the "Review Screen").  The page features a list of four items, each with a bubble next to it: "I agree to the Terms and Conditions, including the Arbitration Agreement"; "I agree to the Privacy Policy"; "I agree to the sending of diagnostic data[] (optional)"; and "Agree to all (optional)."  Review Screen at 1.  Clicking a bubble fills the bubble with a white checkmark against a blue background.  *See id.* at 2; Cantwell Decl. ¶ 15.  Users cannot "finish the set-up process and use their Z Fold3 without clicking either the bubble next to 'I agree to the Terms and conditions, including the Arbitration Agreement' or the bubble next to 'Agree to all.'"  Cantwell Decl. ¶ 15.  Below the item "I agree to the Terms and Conditions, including the Arbitration Agreement" is a bold-

lettered hyperlink labeled "Details."  Review Screen at 1.  Clicking that link shows the user "a screen with a scrollable version of the Terms and Conditions."  Cantwell Decl. ¶ 16; *see id.*, Ex. D (the "Details Screen").  The first three paragraphs of the Details Screen (beneath headers "Terms and conditions" and "ARBITRATION AGREEMENT") are identical to the first three paragraphs shown on the Web Page, except the first two paragraphs on the Details Screen are in all caps instead of bold.  *Compare* Web Page at 2, *with* Details Screen at 1.  Accordingly, the Court will also refer to the language on the Details Screen as the "Arbitration Agreement."

It is undisputed that Plaintiff never opted out of the Arbitration Agreement.  *Compare* Br. at 11 ("[D]espite being repeatedly informed of his right to opt out, and provided with straightforward instructions on how to exercise that right, Plaintiff declined to do so."), *with* Opp. (not contesting this fact).

Plaintiff claims that "[t]hrough no fault of his own, and despite keeping the [Z Fold3] protected from drops, the elements, water, and not mistreating the screen protector, the hinge cracked, causing the screen to become non-responsive and deteriorate in use."  Compl. ¶ 30.  Defendant refused Plaintiff's request to repair the phone under its warranty and informed Plaintiff that it would cost over $500 to repair it.  *See id.* ¶¶ 31, 33.

Plaintiff filed this suit on December 26, 2022.  *See generally id.*  On May 1, 2023, Defendant moved to compel arbitration.  *See generally* Br.

## LEGAL STANDARD

When considering a motion to compel arbitration under the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, courts "apply a 'standard similar to that applicable for a motion for summary judgment,'" *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)).

Under this standard, "the Court must grant a motion to compel arbitration if the pleadings,

discovery materials before the Court, and any affidavits show there is no genuine issue as to

any material fact and it is clear the moving party is entitled to judgment as a matter of law."

*Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561-62 (S.D.N.Y. 2013).  If the facts in

the record are undisputed and "require the matter of arbitrability to be decided against one

side or the other as a matter of law," the Court "may rule on the basis of that legal issue and

avoid the need for further court proceedings."  *Zachman*, 49 F.4th at 101 (quoting *Meyer v.

Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)).

Under Section 2 of the FAA, commercial "agreement[s] . . . to submit to arbitration"

are generally "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has emphasized

that the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'"  *Epic

Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v.

Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  "[B]y its terms, the FAA leaves no place for

the exercise of discretion by a district court, but instead mandates that district courts *shall*

direct the parties to proceed to arbitration on issues as to which an arbitration agreement has

been signed."  *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (original brackets

omitted) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  Still,

"arbitration is a matter of contract and a party cannot be required to submit to arbitration any

dispute which [the party] has not agreed so to submit."  *Howsam v. Dean Witter Reynolds,

Inc.*, 537 U.S. 79, 83 (2002) (citation omitted).  And "while doubts concerning the scope of an

arbitration clause should be resolved in favor of arbitration, th[is] presumption does not apply

to disputes concerning whether an agreement to arbitrate has been made."  *Applied

Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011).

When considering a motion to compel arbitration, a court must first decide whether there is a valid agreement to arbitrate. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Olin Holdings Ltd. v. Libya*, 73 F.4th 92, 101 (2d Cir. 2023) ("Questions concerning the formation and existence of an arbitration agreement must be resolved by the courts in the first instance."); *Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 606 (S.D.N.Y. 2020) ("Unlike the 'enforceability or applicability' of an arbitration agreement, which may be delegated to an arbitrator, questions regarding the 'formation of the parties' arbitration agreement' must be decided by a court." (quoting *Dr.'s Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019))).

Generally, "courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability,' . . . includ[ing] questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014) (quoting *Howsam*, 537 U.S. at 84). The parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions," *Henry Schein*, 139 S. Ct. at 527, but there must be "clear and unmistakable evidence that they did so," *id.* at 531 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

## DISCUSSION

### I.   Agreement to Arbitrate

The Court must first determine whether Plaintiff and Defendant entered into an agreement to arbitrate. *See id.* at 530; *Olin Holdings*, 73 F.4th at 101; *Pacelli*, 459 F. Supp. 3d at 605-06. Defendant argues that the parties have done so. *See* Br. at 12-22; Reply at 2-9. Plaintiff argues that they have not. *See* Opp. at 3-11. The Court agrees with Defendant.

Courts apply state contract law in determining whether parties have entered into an arbitration agreement.  *See Meyer*, 868 F.3d at 73-74.  The Arbitration Agreement states that "[t]he laws of the State of New York . . . shall govern the interpretation of the Agreement and all disputes that are subject to this Agreement," Web Page at 2, and the parties appear to agree that New York law governs, *see* Br. at 11 n.5; Opp. at 3.  Therefore, the Court will apply New York contract law in deciding whether Plaintiff and Defendant entered an agreement to arbitrate.

"To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. . . . Generally, courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract."  *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999); *accord Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 136 (2d Cir. 2022).  "Mutual assent may be manifested 'by word, act, or conduct which evinces the intention of the parties to contract.'"  *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 94 (S.D.N.Y. 2022) (quoting *Minelli Constr. Co. v. Volmar Constr., Inc.*, 917 N.Y.S.2d 687, 688 (2d Dep't 2011)).  And "[i]t is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree."  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004).[2]

---

[2] In its opening brief, Defendant repeatedly relies upon a discussion of shrinkwrap agreements in *Register.com*.  *See* Br. at 12, 14 n.6, 15 & n.10.  Defendant neglects to note, however, that it is not quoting from the majority opinion, or even from an opinion filed by a member of the panel that ultimately decided the case.  Instead, Defendant quotes from a draft opinion –

"Where an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Zachman*, 49 F.4th at 102 (quoting *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019)); *accord Weissman v. Revel Transit, Inc.*, 190 N.Y.S.3d 46, 47 (1st Dep't 2023). "In determining whether an offeree is on inquiry notice of contract terms, New York courts look to whether the term was obvious and whether it was called to the offeree's attention. This often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way." *Zachman*, 49 F.4th at 102 (quotation marks and citation omitted); *accord Wu v. Uber Techs., Inc.*, 186 N.Y.S.3d 500, 529-30 (Sup. Ct. 2022) ("*Wu I*"), *aff'd*, 197 N.Y.S.3d 1, 2 (1st Dep't 2023) ("*Wu II*"). "In considering the question of reasonable conspicuousness, precedent and basic principles of contract law instruct that [the Court] consider the perspective of a reasonably prudent smartphone user." *Meyer*, 868 F.3d at 77; *see Edmundson v. Klarna, Inc.*, --- F.4th ----, 2023 WL 7238741, at *6 (2d Cir. Nov. 3, 2023) ("Courts have viewed the reasonably prudent [internet or smartphone] user as . . . having some familiarity with how to navigate to a website or download an app.").

Based on its plain language, the Arbitration Agreement is a "clear, explicit[,] and unequivocal agreement to arbitrate." *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 845 N.E.2d 1265, 1267 (N.Y. 2006) (quotation marks and citation omitted). It explicitly calls itself "a binding legal agreement" between Plaintiff and

---

included as an appendix to the actual opinion – authored by a member of the panel who died after oral argument and who "presumably would have dissented" from the ultimate disposition. 356 F.3d at 395 n.1 (explaining that the remaining panel members included the draft opinion, which "failed to convince the other members of the panel," in order "to expose [the deceased judge's] views"). The Court presumes that Defendant's reliance on the draft opinion was an unintentional oversight by counsel.

Defendant, and it provides that "all disputes between [Plaintiff] and Samsung . . . shall be resolved exclusively through final and binding arbitration, and not by a court or jury," "according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes."  Web Page at 2; *see Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014) ("The words and phrases used by the parties must, as in all cases involving contract interpretation, be given their plain meaning." (quoting *Brooke Grp. Ltd. v. JCH Syndicate 488*, 663 N.E.2d 635, 638 (N.Y. 1996))).

Plaintiff does not challenge this straightforward reading of the Arbitration Agreement; instead, he disputes whether he assented to the Arbitration Agreement.  *See* Opp. at 4-8. Specifically, he claims that he "did not unambiguously manifest assent to the terms of the arbitration provision, as he never actually viewed the terms, and they were not presented in a clear and conspicuous manner."  *Id.* at 6 (brackets, quotation marks, and citations omitted).[3] The Court finds that Plaintiff agreed to the Arbitration Agreement in two ways: (1) assenting to the shrinkwrap agreement embedded in the External Label; and (2) agreeing to the terms and conditions during the set-up process.[4]

---

[3] Defendant argues that Plaintiff's assertion in his brief that "he never actually viewed the terms" of the Arbitration Agreement, Opp. at 6, is "an unsworn assertion that . . . has no evidentiary value," Reply at 2; *see Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) (per curiam) ("An attorney's unsworn statements in a brief are not evidence."); *Markowitz Jewelry Co. v. Chapal/Zenray, Inc.*, 988 F. Supp. 404, 407 & n.18 (S.D.N.Y. 1997) ("testimonial evidence submitted on motions must be in the form of affidavits or declarations"; collecting cases).  The Court need not reach this issue because even if Plaintiff "never actually viewed the terms" of the Arbitration Agreement, Opp. at 6, he had inquiry notice of the terms.

[4] Defendant also argues that Plaintiff agreed to arbitrate via the Pamphlet included in the Z Fold3's box.  *See* Br. at 18-19.  Because the Court finds that Plaintiff agreed to arbitrate with Defendant by virtue of the External Label and the set-up process, the Court need not decide whether the Pamphlet also serves as a basis for compelling arbitration.  *See McDougall v. Samsung Elecs. Am., Inc.*, No. 23-cv-00168 (LGS), 2023 WL 6445838, at *4 (S.D.N.Y. Oct. 3, 2023) ("As the 'clickwrap' agreement alone is sufficient to support inquiry notice, it is

First, Plaintiff agreed to the Arbitration Agreement by virtue of the shrinkwrap agreement included in the External Label.  The External Label states that someone who "use[s] or retain[s] the device" thereby "accept[s] Samsung's Terms and Conditions, including an Arbitration Agreement."  External Label at 1.  It also identifies a URL providing access to the "[f]ull terms, warranty[,] and opt-out information."  *Id.*  The External Label thus constitutes a shrinkwrap agreement, that is, an agreement that binds a consumer to a contract if the consumer "opens the product and retains it."  *Dye v. Tamko Bldg. Prods., Inc.*, 908 F.3d 675, 678 (11th Cir. 2018).  "The validity of shrinkwrap agreements assumes that buyers have notice of the *existence* of standard adhesion terms, even if they are not read or understood." *Nicosia*, 834 F.3d at 232 (applying Washington law).  Under New York law, such agreements may be enforced.  *See, e.g.*, *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (1st Dep't 2004); *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 572-73 (1st Dep't 1998). Here, Plaintiff undisputedly used and retained the Z Fold3.  In doing so, he agreed to the terms of the External Label – and thus agreed to Defendant's "Terms and Conditions, including an Arbitration Agreement."  External Label at 1.  The External Label placed Plaintiff on inquiry notice that these terms and conditions included an arbitration agreement; the External Label expressly, clearly, and conspicuously alerts the consumer to the existence of the Arbitration Agreement, and it provides a web address where consumers may access the Arbitration Agreement and opt out of arbitration if the consumer so chooses.  *See id.*  Plaintiff never opted out, Br. at 11, and he acted in a way that "a reasonable person would understand to constitute assent" to the Arbitration Agreement, *Zachman*, 49 F.4th at 102 (citation omitted).  Plaintiff therefore agreed to arbitrate with Defendant under the terms of the

---

unnecessary to address Defendant's argument[] that . . . the 'Terms and Conditions' pamphlet independently put Plaintiff on inquiry notice of the Arbitration Agreement.").

External Label.  *See Vasadi v. Samsung Elecs. Am., Inc.*, No. 21-cv-10238, 2021 WL 5578736, at *2, *9 (D.N.J. Nov. 29, 2021) (reaching the same result under New Jersey law for an identically worded label on the box for a different Samsung product).

Second, Plaintiff agreed to the Arbitration Agreement during the Z Fold3's set-up process.  As noted above, the first post-welcome screen in that process includes a bubble stating "I agree to the Terms and Conditions, including the Arbitration Agreement."  Review Screen at 1.  Below that is a "Details" link which, when clicked, takes the consumer to the Arbitration Agreement.  *Id.*; Cantwell Decl. ¶ 16; Details Screen.  Given that Plaintiff admits to having "use[d]" the Z Fold3, Compl. ¶ 30, he must have "finish[ed] the set-up process," Cantwell Decl. ¶ 15.  And he could have done so only by "clicking either the bubble next to 'I agree to the Terms and conditions, including the Arbitration Agreement' or the bubble next to 'Agree to all.'"  *Id.*  Therefore, by necessary inference from his own admission, Plaintiff assented to the Arbitration Agreement.  Whereas the External Label is a shrinkwrap agreement, the Review Screen is a clickwrap agreement, that is, an agreement "which require[s] a user to affirmatively click a box . . . acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website," application, or device.  *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (citation omitted).  Courts applying New York law routinely enforce clickwrap agreements so long as "the agreement's terms and conditions [a]re 'reasonably conspicuous.'"  *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020) (quoting *Meyer*, 868 F.3d at 76); *see, e.g.*, *Wu II*, 197 N.Y.S.3d at 2; *Brooks v. Yang*, 190 N.Y.S.3d 309, 310-11 (1st Dep't 2023); *Weissman*, 190 N.Y.S.3d at 47.  That requirement is satisfied here.  Granted, the hyperlink merely says "Details," which by itself does not offer meaningful notice that, if clicked, it takes the user to the Arbitration

Agreement.  Review Screen at 1.  But the "Details" link is associated with, and right below, a statement that says: "I agree to the Terms and Conditions, *including the Arbitration Agreement*."  *Id.* (emphasis added).  A "reasonably prudent smartphone user" would understand that the "Details" hyperlink would take the user to those terms and conditions, and to the Arbitration Agreement in particular.  *Meyer*, 868 F.3d at 77; *see, e.g.*, *id.* at 80 ("[T]he physical proximity of the notice to the register button and the placement of the language in the registration flow make clear to the user that the linked terms pertain to the action the user is about to take."); *Edmundson*, 2023 WL 7238741, at *8 ("the spatial and temporal proximity of the [defendant's] terms [and conditions] to the mechanisms for manifesting assent" suggested that "a reasonably prudent internet or smartphone user would have been on notice that the hyperlinked terms were connected to finalizing a purchase on the [defendant's website]"); *Hidalgo v. Amateur Athletic Union of U.S., Inc.*, 468 F. Supp. 3d 646, 658 (S.D.N.Y. 2020) ("[T]he fact that notice about the terms and conditions of AAU membership was both spatially and temporally coupled to the applicant's submission of an application further indicates that the plaintiff had 'reasonable notice' that he would be bound by the attendant terms and conditions upon becoming an AAU member."); *McDougall v. Samsung Elecs. Am., Inc.*, No. 23-cv-00168 (LGS), 2023 WL 6445838, at *3-5 (S.D.N.Y. Oct. 3, 2023) (reaching the same conclusion in addressing a similar, though not identical, Samsung phone set-up screen).

Plaintiff objects that the Review Screen "is hardly the type of 'clickwrap' other courts have found sufficient, such as a 'scroll box' which presents to a user who cannot proceed lest he or she drag the cursor to the end of the terms, as Plaintiff was never required to scroll to the arbitration provision in the Terms."  Opp. at 5.  Plaintiff never explains why this difference is dispositive, nor does he cite any authority suggesting that a clickwrap agreement is

enforceable only if it includes a mandatory scroll box.  On the contrary, New York case law provides that "[a]lthough a clickwrap agreement's terms and conditions must be clear and conspicuous, they need not all be simultaneously and immediately visible; the terms may be binding and enforceable even if they are only accessible through a hyperlink."  *Brooks*, 190 N.Y.S.3d at 310 ("The keys to enforceability are a reasonable indication of the existence of the additional terms and the user's being required to manifest assent to them."); *accord Mejia v. Linares*, 197 N.Y.S.3d 127, 127 (1st Dep't 2023); *Weissman*, 190 N.Y.S.3d at 47; *Valelly*, 464 F. Supp. 3d at 640-44.  As the Second Circuit has noted, "there are infinite ways to design a website or smartphone application," and "there are no particular features that must be present to satisfy the reasonably conspicuous standard."  *Edmundson*, 2023 WL 7238741, at *8 (quotation marks and citations omitted).

More generally, Plaintiff maintains that the terms of the Arbitration Agreement "were not presented in a clear and conspicuous manner."  Opp. at 6 (quotation marks and citation omitted).  He asserts that "the provision containing the arbitration clause was buried in a webpage or tucked away in an obscure corner," so "Defendant failed to bring the consumer's attention to material terms that would alter what a reasonable consumer would understand to be her default rights."  *Id.* (brackets, quotation marks, and citations omitted).  In support of this argument, Plaintiff cites several cases for general propositions about how websites and mobile applications must provide effective notice about arbitration agreements.  *See id.* at 6-7 (citing *Arnaud v. Dr.'s Assocs. Inc.*, 821 F. App'x 54 (2d Cir. 2020) (summary order); *Meyer v. Kalanick*, 200 F. Supp. 3d 408 (S.D.N.Y. 2016), *rev'd sub nom. Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017); *Berkson v. Gogo*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015); *Scotti v. Tough Mudder Inc.*, 97 N.Y.S.3d 825 (Sup. Ct. 2019)).  But Plaintiff never explains why the facts of those cases are materially similar to the facts of this case, and the Court "generally

will decline to consider issues that are not sufficiently argued."  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) (quotation marks and citation omitted); *see Informed Consent Action Network v. Becerra*, 595 F. Supp. 3d 70, 80 n.4 (S.D.N.Y. 2022) ("When a party fails adequately to present arguments . . . , courts may consider those arguments abandoned." (quotation marks and citation omitted)); *In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198, 208 n.4 (S.D.N.Y. 2019) ("a single, conclusory, one-sentence argument is insufficient to adequately raise an issue" (brackets, quotation marks, and citation omitted)).

Moreover, the uncontested facts presented here show that the Arbitration Agreement is not "buried in a webpage or tucked away in an obscure corner."  Opp. at 6 (brackets, quotation marks, and citation omitted); *cf. Berkson*, 97 F. Supp. 3d at 403 (denying motion to compel arbitration because it was factually contested whether plaintiff's assent to the terms of service was required to create an account and use defendant's product); *Scotti*, 97 N.Y.S.3d at 834 (denying motion to compel arbitration because movant "failed to set forth sufficiently detailed evidence as to how its on-line registration webpage appeared to the plaintiffs, or other users/registrants, during the relevant time period").  To be sure, the full text of the Arbitration Agreement is available only online.  But information about the Arbitration Agreement – including, critically, either a URL (for the External Label) or a hyperlink (for the Review Screen) taking the user to the text of the Arbitration Agreement – is presented to the consumer in an adequately prominent manner.

The External Label provides a bold-typeface URL taking consumers to the Arbitration Agreement.  *See* External Label at 1; *cf. Nicosia*, 834 F.3d at 237 (faulting disclosure of consequences of placing order on defendant's website because it was "not bold, capitalized, or conspicuous in light of the whole webpage"); *Berkson*, 97 F. Supp. 3d at 404 (faulting

hyperlink for not being "in large font, all caps, or in bold").  The URL on the External Label is located near the top of the overall body of text (thus enhancing its prominence), and it is expressly identified as providing access to the "[f]ull terms," "including an Arbitration Agreement."  External Label at 1.  Accordingly, the External Label gives "a reasonably prudent smartphone user . . . constructive notice of the terms" of the Arbitration Agreement. *Meyer*, 868 F.3d at 79; *cf. Arnaud*, 821 F. App'x at 56 ("A reasonable user would not find the terms and conditions link contained on the page to be conspicuous, since the link was at the bottom of the page, in relatively small font, and was introduced by no language other than the shorthand 'T & Cs.'").

Regarding the Details Screen, the fact that the Arbitration Agreement is "available only by hyperlink does not preclude a determination of reasonable notice."  *Meyer*, 868 F.3d at 78.  "As with paper contracts or shrinkwrap agreements, to be bound [by a clickwrap agreement], an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence." *Nicosia*, 834 F.3d at 232.  Thus, "[a]s long as the hyperlinked text [i]s itself reasonably conspicuous – and [the Court] conclude[s] that it [i]s – a reasonably prudent smartphone user would have constructive notice of the terms."  *Meyer*, 868 F.3d at 79.  The Details Screen is "uncluttered," and "[t]he entire screen is visible at once, [so] the user does not need to scroll beyond what is immediately visible to find notice of the [Arbitration Agreement]."  *Id.* at 78.  "Although the ['Details' hyperlink] is in a small font, the dark print contrasts with the bright white background, and the hyperlink[] [is] . . . underlined."  *Id.*  Further, the "Details" hyperlink is "directly adjacent to the button intended to manifest assent to the terms," *id.* (quotation marks and citation omitted), thus making it less likely that "the reader's eye would be drawn elsewhere," *Starke*, 913 F.3d at 294.  "While it may be the case that many users will not

bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice." *Meyer*, 868 F.3d at 79.  Thus, Defendant's argument that the Review Screen fails to present the terms of the Arbitration Agreement "in a clear and conspicuous manner" is rejected.  Opp. at 6 (quotation marks and citation omitted).

## II.   Unconscionability and Scope

Plaintiff also argues that "the purported agreement is unconscionable and, therefore, unenforceable." *Id.* at 8 (quotation marks and citation omitted).  An unconscionable contract is "one which is so grossly unreasonable as to be unenforceable according to its literal terms because of an absence of meaningful choice on the part of one of the parties . . . together with contract terms which are unreasonably favorable to the other party." *In re Lawrence*, 23 N.E.3d 965, 976 (N.Y. 2014) (brackets omitted) (quoting *Lawrence v. Miller*, 901 N.E.2d 1268, 1271 (N.Y. 2008)).  An unconscionable contract is "usually voidable since a party to a contract has the power to validate or ratify the contract, as well as the power to avoid it." *King v. Fox*, 851 N.E.2d 1184, 1191 (N.Y. 2006).  Put otherwise, "under New York law, unconscionability relates to a contract's *enforceability*, not its existence." *Wu I*, 186 N.Y.S.3d at 523 n.7; *see New Brunswick Theological Seminary v. Van Dyke*, 125 N.Y.S.3d 153, 159 (1st Dep't 2020) ("The doctrine of unconscionability . . . protects against 'unjust *enforcement* of onerous contractual terms which one party is able to impose upon the other because of a significant disparity in bargaining power.'" (brackets omitted and emphasis added) (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 385 N.E.2d 566, 569 (N.Y. 1978))).  Unconscionability is a recognized basis for holding that an arbitration agreement is unenforceable.  *See Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  Defendant argues that the Arbitration Agreement is not unconscionable.  *See* Reply at 7-9.  This issue has been delegated to the arbitrator, so the Court need not resolve it.

As noted, parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions," *Henry Schein*, 139 S. Ct. at 527, so long as there is "clear and unmistakable evidence that they did so," *id.* at 531 (quoting *First Options*, 514 U.S. at 944). An agreement to arbitrate a gateway issue – sometimes called a delegation clause – "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Significantly, under "what is sometimes called the 'severability principle,'" a court will "treat a challenge to the validity of an arbitration agreement (or a delegation clause) separately from a challenge to the validity of the entire contract in which it appears." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019). "Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 561 U.S. at 70. Unless a party "challenge[s] the delegation provision specifically," a court "must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4." *Id.* at 72.

The Court finds that Plaintiff and Defendant clearly and unmistakably delegated the resolution of enforceability issues to the arbitrator through adoption of the AAA Consumer Rules. "When parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Olin Holdings*, 73 F.4th at 105 (quotation marks and citation omitted). So too here. The Arbitration Agreement expressly adopts the AAA Consumer Rules. *See* Web Page at 2; Details Screen at 1. AAA Consumer Rule 14(a) provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration

agreement or to the arbitrability of any claim or counterclaim."  Am. Arbitration Ass'n,

*Consumer Arbitration Rules* 17 (2014) (the "AAA Consumer Rules," and together with other

arbitral rules issued by the AAA, the "AAA Rules"), https://adr.org/sites/default/files/

Consumer%20Rules.pdf [https://perma.cc/R5UL-K5US].[5]

      The Arbitration Agreement's incorporation of the AAA Consumer Rules is clear and

unmistakable evidence of the parties' intent to arbitrate disputes about enforceability and

unconscionability.  This result is consistent with nonbinding yet persuasive cases within this

Circuit interpreting materially identical provisions of other sets of AAA-promulgated rules.

*See, e.g.*, *Dr.'s Assocs., LLC v. Tripathi*, 794 F. App'x 91, 94 (2d Cir. 2019) (summary order)

("With respect to the enforceability of the arbitration agreement, we agree with the district

court that the arbitration agreement clearly and unmistakably delegated this issue for the

arbitrator's determination in the first instance. . . . The parties expressly incorporated the

Commercial Rules of the American Arbitration Association . . . into the arbitration

agreement."); *Yost v. Everyrealm, Inc.*, No. 22-cv-06549 (PAE), 2023 WL 2859160, at *7

(S.D.N.Y. Apr. 10, 2023) ("as numerous courts have held, the AAA's Rules empower the

arbitrator to resolve questions of arbitrability, including based on claims of as-applied

unconscionability"; collecting cases).  It also follows from binding Second Circuit precedent

stating that the incorporation of the AAA Rules (or similarly worded rules) generally

delegates "arbitrability" issues to the arbitrator.  *See, e.g.*, *Olin Holdings*, 73 F.4th at 106

---

[5] "Although the parties have referred to . . . and partially quoted" the AAA Consumer Rules, "the rules themselves are not in the record.  [The Court] therefore take[s] judicial notice of the rules."  *DiTucci v. First Am. Title Ins.*, No. 21-4120, 2023 WL 382923, at *1 n.2 (10th Cir. Jan. 25, 2023) (unpublished); *see* Fed. R. Evid. 201(b)(2).  The Court "select[s] the version[] of the rules in effect at (and after) the time of [Plaintiff's purchase" of the Z Fold3 – namely, "the AAA Consumer Rules that took effect on September 1, 2014."  *DiTucci*, 2023 WL 382923, at *1 n.2.

(International Chamber of Commerce Arbitration Rules); *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 70, 72-74 (2d Cir. 2012) (United Nations Commission on International Trade Law Arbitration Rules); *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 333, 344-45 (2d Cir. 2010) (AAA International Dispute Resolution Procedures); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208-11 (2d Cir. 2005) (AAA Commercial Rules).  And it accords with decisions by other circuit courts that incorporation of the AAA Rules delegates enforceability and unconscionability disputes to the arbitrator.  *See, e.g.*, *Edwards v. Doordash, Inc.*, 888 F.3d 738, 746 (5th Cir. 2018); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-34 (9th Cir. 2015); *In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 243-45 (11th Cir. 2021).

To be sure, the Second Circuit has cautioned that where "the arbitration agreement is narrower, vague, or contains exclusionary language suggesting that the parties consented to arbitrate only a limited subset of disputes, incorporation of rules that empower an arbitrator to decide issues of arbitrability, standing alone, does not suffice to establish the requisite clear and unmistakable inference of intent to arbitrate arbitrability."  *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 319 (2d Cir. 2021).  But the Arbitration Agreement here is not "narrow[]" or "vague" and does not "contain[] exclusionary language."  *Id.*  On the contrary, it flatly applies to "*all* disputes between [Plaintiff] and [Defendant] that in *any* way relate to, or arise from, the standard limited warranty; or the sale, condition, or performance of the product."  Web Page at 2 (emphases added); Details Screen at 1 (emphases added); *see Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 516 (2d Cir. 2023) ("'Any' means 'every'; its meaning is expansive rather than restrictive." (footnote, further quotation marks, and citations omitted)); *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 70 (2d Cir.

2011) ("all" is "one of the least ambiguous words in the English language" (brackets and citation omitted)).

Plaintiff challenges the enforceability of the Arbitration Agreement as a whole, *see* Opp. at 8-12, but he does not "challenge[] the delegation provision specifically," *Rent-A-Center*, 561 U.S. at 72.  Hence, the Court "must treat [the Arbitration Agreement's delegation clause] as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4."  *Id.*  The arbitrator, not the Court, must decide whether the Arbitration Agreement is unconscionable. *See id.*

Finally, Defendant argues that the present dispute falls within the scope of the arbitration clause.  Plaintiff does not refute Defendant's argument (presumably because the arbitration clause is extremely broad).  *Compare* Br. at 23-24, *and* Reply at 10, *with* Opp. at 11-12.  Again, the Court need not decide this issue because the determination of whether the Arbitration Agreement encompasses the present dispute – often described as an inquiry into the "scope" of the arbitration agreement, *see, e.g.*, *First Options*, 514 U.S. at 944-45 – has also been delegated to the arbitrator through the Arbitration Agreement's incorporation by reference of the AAA Consumer Rules, *see* Br. at 22-23 (so arguing); AAA Consumer Rules at 17 (Rule 14(a): "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, *scope*, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (emphasis added)).  The law of this Circuit and of New York is that the incorporation by reference of the AAA Rules (or other rules with materially similar language) generally constitutes clear and unmistakable evidence of the parties' intent to arbitrate disputes about the scope of the arbitration agreement.  *See, e.g.*, *Contec*, 398 F.3d at 208-11 (AAA Commercial Arbitration Rules); *Offshore Expl. & Prod. LLC v. Morgan Stanley Priv. Bank, N.A.*, 986 F. Supp. 2d 308, 315-16

(S.D.N.Y. 2013) (AAA International Arbitration Rules); *Revis v. Schwartz*, 140 N.Y.S.3d 68, 76-79 (2d Dep't 2020) (AAA Voluntary Labor Arbitration Rules), *aff'd*, 185 N.E.3d 496 (N.Y. 2022); *Gibson v. Seabury Transp. Advisor LLC*, 936 N.Y.S.2d 539, 539 (1st Dep't 2012) (JAMS Comprehensive Arbitration Rules and Procedure).

### III.   Stay Versus Dismissal

Defendant requests dismissal of the Complaint.  *See* Br. at 25.  Plaintiff opposes dismissal but does not request a stay should the Court rule for Plaintiff on the merits.  *See generally* Opp.  The FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay requested."  *Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015). "Following *Katz*, courts in this Circuit are split on whether a stay is required even if no party requests one."  *Bissonnette v. LePage Bakeries Park St., LLC.*, 49 F.4th 655, 664 (2d Cir. 2022) (Jacobs, J., concurring), *cert. granted on other grounds*, --- S. Ct. ----, 2023 WL 6319660 (U.S. Sept. 29, 2023); *compare id.* at 664 (arguing that "the FAA mandates a stay whether or not a party requests one"), *with id.* at 674 (Pooler, J., dissenting) (arguing that "where a party does not request a stay, there is no application to stay the trial, and a district court retains the authority to dismiss the action" (brackets, quotation marks, and citation omitted)).  Courts in this District, however, "have increasingly exercised their discretion to stay a matter pending the resolution of arbitration."  *Graham v. Bloomberg L.P.*, No. 22-cv-07015 (VSB), 2023 WL 6037974, at *6 (S.D.N.Y. Sept. 15, 2023) (collecting cases).

"[T]he Court concludes, as an exercise of its discretion, that a stay is preferable to dismissal, as dismissal would allow [the party opposing arbitration] to 'appeal at once, and thereby delay the arbitration, with associated costs and uncertainties.'"  *Monk v. Goldman Sachs & Co. LLC*, No. 22-cv-06056 (JMF), 2023 WL 22618, at *7 (S.D.N.Y. Jan. 3, 2023) (quoting *Bissonnette*, 49 F.4th at 664 (Jacobs, J., concurring)); *see Landis v. N. Am. Co.*, 299

U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

Defendant's request for dismissal is denied.[6]

CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration is GRANTED, but its request for dismissal is DENIED.  The Court STAYS the case pending completion of arbitration proceedings.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 10.

Dated: November 14, 2023
          New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

---

[6] Plaintiff's cursory request "in the alternative [that the Court] grant leave to file an Amended Complaint," Opp. at 12, is DENIED.  Given the unambiguous language of the parties' arbitration agreement, any amended pleading would be futile (and Plaintiff has not offered any reason to conclude otherwise).  *See Goodrich v. Long Island R.R. Co.*, 654 F.3d 190, 200 (2d Cir. 2011) (A "request to replead should be denied in the event that repleading would be futile.").